**IN THE UNITED STATES DISTRICT FOR THE**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LEWIS A. COCHRAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION 04-0830-BH-D** |
| | ) | |
| | ) | |
| **J. C. GILES,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

    Lewis A. Cochran, a state prisoner currently in the custody of respondent, has petitioned this

Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Doc.1 ) [1]  Petitioner challenges

the validity of his November 20, 2003 conviction and sentence in the Circuit Court of Mobile County,

Alabama for the offense of murder in violation of Alabama Code Section 13A-6-2 (1975). [2]  (Id.)

---

    [1]  Petitioner filed his habeas petition on a court provided form.  Along with the form, petitioner
submitted a type written document entitled "Petitioner for Habeas Corpus to the United States
Southern District Court and Supporting Brief" consisting of seven (7) pages and a second type written
document entitled "Brief in Support of Petition for Habeas Corpus" consisting of nine (9) pages.  These
three documents were collectively identified and docketed as "Document 1."

    [2]  Section 13A-6-2 provides, in pertinent part:

    (a) A person commits the crime of murder if:
    (1) With intent to cause the death of another person, he causes the death of that person
    or of another person; or

This action has been referred to the undersigned Magistrate Judge for entry of a report and recommendation as to the appropriate disposition of the issues in the petition.  See 28 U.S.C. § 636(b)(1)(B), 28 U.S.C. § 2254, Rule 8(b)(1) and Local Rule 72.2(c)(4).  This matter presently is before the Court on petitioner's petition and brief in support and respondent's answer and evidentiary submissions in support.

The undersigned has carefully reviewed the record and exhibits, and finds that there are sufficient facts and information upon which the issues under consideration properly may be resolved.  Therefore, no evidentiary hearing is required upon the issues.  Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 118 L. Ed 2d 318 (1992); Local Rule 72.1(c).

## I.   **FINDINGS OF FACT** [3]

---

(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person; or
(3) He commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree or any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he is committing or attempting to commit, or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person.

§13A-6-2(a).

[3]  The facts of the case as presented at trial are, in sum, as follows:

Petitioner Lewis Cochran and Eric Reed were roommates and had been friends for nearly a decade.  The pair had a volatile relationship, and would argue frequently.   On the evening of March 22, 2003, after spending much of the day drinking and partying, Cochran and Reed were involved in an altercation which culminated in Reed choking Cochran and causing him to fall to the ground.  A few hours later,  Reed threatened Cochran with a knife at which point Cochran retreated to the bedroom, returning with a

1.      Petitioner, Lewis Cochran was indicted in September 2003 by a Mobile County Grand Jury on a charge of murder in violation of Alabama Code Section 13A-6-2 (1975). (Doc. 8, Exhibit A, p. 4)

2.      After jury selection, counsel for petitioner raised a <u>Batson</u>[4] challenge to the state's striking of a juror with a Hispanic surname.  (Doc. 8, Exhibit A, pp. 33-34)  The trial court denied the motion and the jury was seated.  (<u>Id.</u>)

3.      During the questioning of the state's first witness, trial counsel for petitioner made an oral motion to suppress petitioner's statement made to the arresting officer.  (Doc. 8, Exhibit A, p. 51) After conducting a suppression hearing and allowing additional arguments from counsel, the court denied the motion to suppress.  (<u>Id.</u> at pp. 53-69; 164-176)

4.      On or about November 20, 2003, the jury returned a verdict of guilty on the charge of murder and on December 18, 2003 petitioner was sentenced to a term of life imprisonment. (Doc. 8, Exhibit A, p. 281)

5.      On or about April 9, 2004, petitioner appealed his conviction and sentence to the

---

loaded shotgun.  Cochran shot Reed twice at point blank range in the head and face causing his death.  Although Cochran testified that Reed was sitting up on the couch and threatened to kill Cochran at the time the shots were fired, the medical examiner suggested that based on the crime scene, Reed was asleep at the time he was shot. After shooting Reed, Cochran telephoned the police and advised that he had killed someone.

(Doc. 8, Exhibit A, Trial Transcript)

[4]  In <u>Batson v. Kentucky,</u> the United States Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection." 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986).

Alabama Court of Criminal Appeals, on the grounds, in sum that (1) the trial court improperly ruled that petitioner failed to make a prima facie case in support of his <u>Batson</u> challenge, and (2) that the trial court improperly denied his motion to suppress. (Doc. 8, Exhibit B)

6.      On June 18, 2004 the Alabama Court of Criminal Appeals issued a memorandum opinion affirming petitioner's conviction and sentence.  (Doc. 8, Exhibit D)

7.      On or about July 1, 2004 petitioner filed an application for rehearing, which was denied on July 16, 2004.  (Doc. 8, Exhibits E & F)

8.      On July 30, 2004 petitioner filed a petition for writ of certiorari to the Alabama Supreme Court which was denied on September 17, 2004.  (Doc. 8, Exhibits G & H)

9.      On September 20, 2004, the Alabama Court of Criminal Appeals issued a certificate of final judgment.  (Doc. 8, Exhibit I)

10.      On or about December 29, 2004 petitioner filed the instant petition for writ of habeas corpus on the grounds, in sum, that (1) the trial court improperly determined that petitioner failed to make a prima facie case in support of his <u>Batson</u> challenge to the states' striking a prospective juror, and (2) the trial court improperly denied petitioner's motion to suppress statements made after he invoked his right to counsel.  (Doc. 1)

11.      Respondent filed an answer to the petition on April 18, 2005 maintaining, in sum that petitioner's claims are due to be denied since petitioner has failed to show that the decision of the Alabama Court of Criminal Appeals was contrary to federal law or an unreasonable application of federal law.  (Doc. 8)

4

## II.   **DISCUSSION**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") "amended 28 U.S.C.

§ 2254 by establishing a more deferential standard for federal court review of state court

adjudications."  Fugate v. Turpin, 8 F.Supp.2d 1383, 1385 (M.D.Ga.), aff'd, 261 F.3d 1206 (11th

Cir. 2001).  The pertinent portions of section 2254 provide as follows:

> (d)  An application for a writ of habeas corpus on behalf of person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
> >
> > (e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254 (West Supp. 1999).

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme

Court explained the application of section 2254(d).  The Court stated that "state-court judgments must

be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly

convinced that a federal constitutional right has been violated."  Id. at 389, 120 S.Ct. at 1511.  The

Court further stated:

> [T]he most important point is that an *unreasonable* application of federal law is
> different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s
> 'unreasonable application' clause, then, a federal habeas court may not issue the writ
> simply because that court concludes in its independent judgment that the relevant state-
> court decision applied clearly established federal law erroneously or incorrectly.
> Rather, that application must also be unreasonable.

Id. at 411, 120 S.Ct. at 1522 (emphasis added).  In applying the Williams standard, the United States

Court of Appeals for the Eleventh Circuit in McIntyre v. Williams, 216  F.3d 1254 (11th Cir.), cert.

denied, 511 U.S. 1021, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (2000), indicated that a writ of habeas

corpus should be issued *only* if "the state court's decision was contrary to, or involved an objectively

unreasonable application of, the governing Federal law set forth by Supreme Court cases."  Id. at

1257.  Moreover, the Supreme Court has more recently stated that "[a] state determination may be set

aside under [the Williams] standard if, under clearly established federal law, the state court was

unreasonable in refusing to extend the governing legal principle to a context in which the principle should

have controlled."  Ramdass v. Angelone, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d

125 (2000).

In Bottoson v. Moore, 234 F.3d 526 (11th Cir. 2000), cert. denied, 534 U.S. 956, 122 S. Ct.

357, 151 L. Ed. 2d 270 (2001), the Eleventh Circuit elaborated on the applicable standard:

> A state-court decision is contrary to the Supreme Court's clearly established
> precedent (1) if the state court applies a rule that contradicts the governing law as set
> forth in Supreme Court case law, or (2) if the state court confronts a set of facts that
> are materially indistinguishable from those in a decision of the Supreme Court and
> nevertheless arrives at a result different from Supreme Court precedent.  See  Williams
> v. Taylor, 529 U.S. 362, 120 S. Ct.1495, 1519-20, 146 L. Ed. 2d 389 (2000).

> A state court decision involves an unreasonable application of Supreme Court
> precedent "if the state court identifies the correct governing legal rule from [Supreme
> Court] cases but unreasonably applies it to the facts of the particular state prisoner's

6

case." Williams, 120 S. Ct. at 1520.  In addition, a state court decision involves an
unreasonable application of Supreme Court precedent "if the state court either
unreasonably extends a legal principle from [Supreme Court] precedent to a new
context where it should not apply or unreasonably refuses to extend that principle to a
new context where it should apply." Id.

234 F.3d at 531.  The Act, as amended, presumes as correct all determinations of factual issues made

by a state court and places the burden upon the petitioner of rebutting such a presumption of

correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

In Lockyer v. Andrade, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003), a case involving the

application of § 2254(d), the Supreme Court held that "[a]s a threshold matter," a court applying this

section must "decide what constitutes 'clearly established Federal law, as determined by the Supreme

Court of the United States.'" 123 S. Ct. at 1172.  "Section 2254(d)(1)'s 'clearly established' phrase

'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant

state-court decision.'" Id. (quoting Williams v. Taylor, 529 U.S. at 412).      After discerning the

"clearly established Federal law," the court must then determine, under the "contrary to" clause,

whether the state court applied a rule that contradicts the governing law or whether the state court

confronted a set of facts that were materially indistinguishable from those in a decision of the Supreme

Court and nevertheless arrived at a result different from Supreme Court precedent.  See Lockyer, 123

S. Ct. at 1173.  "The 'unreasonable application' clause requires the state court decision to be more

than incorrect or erroneous." Id.  "The state court's application of clearly established law must be

objectively unreasonable." Id.  With this legal framework in mind, the undersigned now turns to the

merits of each of petitioner's habeas claims.

A.   <u>Batson Challenge</u>

Petitioner first argues that the trial court erred when it concluded that he failed to establish a prima facie case of discrimination under <u>Batson</u>.  (Doc. 1) Specifically, petitioner argues that "[t]he trial court erred in finding that I had failed to make a prima facie showing in support of my <u>Batson</u> challenge" and maintains that the district attorney  "struct [sic] the hispanic juror Ms. Sanchez without enough evidence to support her reason."  (<u>Id.</u> at 7)  Petitioner further argues that "the trial court did not engage in the complete <u>Batson</u> analysis because it determined that the Appellant had failed somehow to show that venire memeber [sic] Sanchez was in fact hispanic."  (<u>Id.</u>)  Petitioner argues that "[c]ontrary to the trial court's assertion contained in its question to counsel- - that the only evidence of the stricken juror's ethnicity was the fact that her last name was Sanchez - the court bad [sic] before it ample evidence that the potential juror was hispanic."  (Doc. 1, Brief in Support, p. 5)

In response, the state argues that petitioner presented the exact issue on appeal and the Alabama Court of Criminal Appeals found that the trial court did not err in denying petitioner's challenge.  (Doc. 8, p. 5)  The state argues that petitioner has "failed to show that this decision...was an 'unreasonable application' of <u>Batson</u> or was based on an 'unreasonable determination of ' the facts presented..." and therefore, petitioner's claim should be denied.  (<u>Id.</u> at 5-6)

The Alabama Court of Criminal Appeals concluded that petitioner's argument regarding his <u>Batson</u> challenge could not be properly reviewed since "the record does not contain a copy of the circuit clerk's jury list and the strike list."  (Doc. 8, Exhibit D) However, the court proceeded to review the claim on the merits.  The court stated, in pertinent part:

[A]fter the jury had been struck, defense counsel made a <u>Batson</u> motion on the ground

8

that the prosecutor struck venire member N.J.S. "because my client is from Honduras and I think the State's only reason for striking her is because it's obvious that she is either from Central or South America."  The trial court denied the appellant's motion without requiring the prosecutor to articulate race- neutral reasons for striking N.J.S.

The party making a <u>Batson</u> challenge bears the burden of establishing a prima facie case of discrimination, and without such proof, the prosecution is not required to state its reasons for its peremptory challenges.  <u>See</u> <u>Ex parte Branch</u>, 526 So. 2d 609 (Ala. 1987).

...

Because the appellant based his <u>Batson</u> motion solely on his belief that the State struck N.J.S. because she appeared to be from Central America or South America, he did not establish a prima facie case or discrimination.  Therefore, the trial court did not err in denying his <u>Batson</u> motion without requiring the prosecution to articulate race-neutral reasons for striking N.J.S.

(<u>Id.</u>)

Thus, petitioner's claim was adjudicated on the merits by the Alabama Court of Criminal Appeals.  A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d).  As stated previously, in order to be entitled to relief under § 2254(d), petitioner must demonstrate that the state court's adjudication of his claim: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or  "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254 (d).

The record before the court reflects that, after the jury had been struck, counsel for petitioner objected to the State's striking of juror No. 31.  (Doc. 8, Exhibit A, p. 33)  The following exchange occurred between counsel for petitioner, the state and the trial court out of the presence of the jury:

9

Mr. Patton:  The State's last strike was juror no. 31.  Juror no. 31 is Nuris J. Sanchez.  I have a Batson challenge on that because my client is from Honduras and I think the State's only reason for striking here is because it's obvious that she is either from Central or South America.

The Court:  How do you know - - - other than the fact that Ms. Sanchez has an hispanic last name, how do we know her origin?

...

Mr. Patton:  Judge, just from my observation of her during voir dire, and her speech and her accent, and her physical features, it was obvious - - I may be wrong Judge.  She may be from Alaska, for all I know.  But just based on my observation of her and her speech, it would seem to be apparent to me that she is from somewhere in Central or South America or somewhere down south, further south than where we are right now.

The Court:  What does the State have to say?

Ms. Colvin:  Judge, just, I guess, more along the lines of what you were saying.  I mean, I don't know if she had been previously married or what the basis of her last name was.  I don't know if she is even hispanic as opposed to another descent that would be a darker complexion or the features that Mr. Patton described.  It was just based on answers to the questions and not - - you know, just the feel from her responses to questions; not based solely on her descent because I don't know what her descent is.

The Court:  Neither does the Court.  I deny your motion.

(Doc. 8, Exhibit A, pp. 33-34)

The United States Supreme Court recently reaffirmed the standard for evaluating whether a peremptory strike was motivated by racial or ethnic discrimination.  See Johnson v. California, ___U.S. ___, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), and Miller-El v. Dretke, _____U.S. ___, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005).  Under the now familiar tripartite test first articulated in Batson, the trial court must first determine whether the party challenging the peremptory strikes has established a prima facie case of discrimination by "establishing facts sufficient to support an inference of racial discrimination. " Johnson, 125 S.Ct. at 2416.  '"[T]he establishment of a prima facie case is an

absolute precondition to further inquiry into the motivation behind the challenged strike.'" U.S. v. Ochoa Vasquez, ___ F.3d ___, 2005 WL 2662962 (11th Cir., October 20, 2005) quoting Central Alabama Fair Housing Center, Inc. v. Lowder Realty Co., Inc., 236 F.3d 629, 636 (11th Cir. 2000). The Supreme Court in Batson identified the following circumstances that may support a prima facie case of racial discrimination:  "(1) engaging in a 'pattern' of strikes against venire members of one race, or (2) questions or statements during voir dire or in exercising challenges that suggest a discriminatory purpose." Lowder, 236 F.3d at 636 (citing Batson, 476 U.S. at 97, 106 S.Ct. 1712, 90 L.Ed.2d 69). "In making out a prima facie case, 'the defendant must point to more than the bare fact of the removal of certain venire persons....'" Id. at 637 (quoting United States v. Allison, 908 F. 2d 1531, 1538 (11th Cir. 1990)).

"[T]he mere fact of striking a juror or a set of jurors of a particular race does not necessarily create an inference of racial discrimination." Id. at 636. [5]

    Next, if the objector makes a prima facie showing, the burden then shifts to the party making the strike to articulate a race-neutral explanation for the challenged strike.  Johnson, 125 S.Ct. at 2416; United States v. Allen-Brown, 243 F.3d 1293, 1297 (11th Cir.2001), cert. denied,  534 U.S. 1010, 122 S.Ct. 496, 151 L.Ed. 2d 407 (2001).  Finally, once the explanation is articulated, the district court must determine the persuasiveness of the justification and decide whether the objector has carried its

---

    [5]  The Lowder court also recognized that "[t]he number of jurors of one race struck by the challenged party may be sufficient by itself to establish a prima facie case where a party strikes all or nearly all of the members of one race on a venire." 236 F. 3d at 637 citing United States v. Williams, 936 F. 2d 1243, 1246 (11th Cir. 1991) (finding a prima facie case where prosecutor struck all of the African-American members of the venire).

burden of proving purposeful discrimination.  Id. at 2416; United States v. Novaton, 271 F.3d 968,

1002-03 (11th Cir.2001), cert. denied, 535 U.S. 1120, 122 S.Ct. 2345, 153 L.Ed.2d 173 (2001).

The ultimate burden of persuasion "rests with, and never shifts from, the opponent of the strike. Thus,

even if the [striker] produces only a frivolous or utterly nonsensical justification for its strike, the case

does not end--it merely proceeds to step three." Johnson, 125 S.Ct. at 2417.

   In Lowder the defendant alleged that the state engaged in a "pattern" of striking members of

one race when it struck two white males from the venire.  236 F. 3d at 636.  The trial court found that

the defendant had established a prima facie case of racial striking.  Id.   The Eleventh Circuit Court of

Appeals reversed, holding that the state's striking of two white males was "inadequate to raise an

inference of racial discrimination...."  Id.  The Court further held that since the defendant had failed to

establish a prima facie case "the district court should not have asked the plaintiffs to offer race-neutral

reasons justifying their strikes...."  Id.  at 638, 639; see also U.S. v. Ochoa Vasquez, 2005 WL

2662962 at * 20 (holding that plaintiff failed to present a prima facie case of a "pattern" of

discrimination)

   In the present case, counsel for petitioner objected to the states' striking of Juror No. 31  on

the basis that he *thought* she looked like she was hispanic and had a hispanic surname.  (Doc. 8,

Exhibit A , p. 33) Specifically, counsel for defendant stated that "from [his] observation of [the juror]

during voir dire, and her speech and her accent, and her physical features, it was obvious... it would

seem to be apparent to me that she is from somewhere in Central or South America or somewhere

down south, further south than where we are right now."  (Doc. 8,   Exhibit A, pp. 33-34)  The state

responded that it was unaware of the juror's ethnic origin and struck her from the panel based on her

12

responses to voir dire questioning.  (Id.)  Based on this exchange, the trial court then denied the defendant's objection.  (Id.) [6]

The Alabama Court of Criminal Appeals concluded that the trial judge did not err in denying the Batson challenge since counsel for defendant failed to state a prima facie case of discrimination.  As stated previously, "the defendant must point to more than the bare fact of the removal of certain venire persons" in order to establish a prima facie case of discrimination.  In this case defendant pointed only to the bare fact that the state had used one of its strikes to remove a female juror who appeared hispanic and had a hispanic surname, which is insufficient to establish a prima facie case of discrimination.  Thus, the undersigned finds that the state court's determination that the court did not err in denying petitioner's Batson claim was not contrary to, or involved an unreasonable application of, clearly established Federal law," or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2).  Accordingly, Claim No. 1 of the petition is due to be denied.

>   B.   Motion to Suppress

Petitioner next argues that the trial court erred in denying the motion to suppress the recorded statement he made to the arresting officer since it was made after he indicated he wanted to speak with a lawyer.  (Doc. 1) Specifically, petitioner argues that he told officer he wanted a lawyer and did not want to sign anything but the officer kept asking what happened and "I felt I had to tell him and I did

--------

[6] Since the trial court determined that the defendant failed to make a prima facie case of discrimination under Batson , pursuant to the holding of Lowder, the court was not compelled to ask the state to articulate race neutral reasons for striking juror No. 31.

not know I was giving up my rights." (Id. at 8 )  Petitioner further maintains that he was drinking the day

of the murder when he made statement to police.  Finally, petitioner maintains  that he had no formal

education, that he came to the United States from Honduras at age 7 and has a  "lack of appreciation of

his constitutional rights" and  based on his 'background, experience and conduct,' the trial court clearly

erred in finding that he knowingly and voluntarily incriminated himself after exercising his Sixth

Amendment right to counsel.  (Doc. 1, Brief in Support, p. 8)

 In response, the State contends that the Alabama Court of Criminal Appeals "evaluated the

circumstances surrounding Cochran's statement in light of both Miranda and Edwards "and correctly

concluded that petitioner's statement, made after he had invoked his rights, was spontaneous and not

the result of interrogation.  (Doc. 8, pp. 8-9)  Respondent further argues that petitioner is not due

habeas relief since he has not shown that the decision of the Alabama Court of Criminal Appeals "was

the result of either an 'unreasonable application of' Miranda or Edwards or an 'unreasonable

determination of the facts' that were presented in his direct appeal."  (Id.)

 The Alabama Court of Criminal Appeals addressed petitioner's argument on the merits as

follows:

> The appellant also argues that the trial court erroneously denied his motion to suppress
> the statement he made to a law enforcement officer after he had invoked his right to
> counsel.  During the suppression hearing, Lieutenant Lawrence Battiste of the Mobile
> County Sheriff's Department testified that, on March 22, 2003, while at the crime
> scene, he removed the appellant from the back seat of a patrol vehicle and placed him
> in the front seat of his unmarked vehicle; that, when he started advising the appellant of
> his Miranda rights, the appellant indicated that he wanted an attorney; that he told the
> appellant that he needed to advise him of his rights; that, after he finished advising the
> appellant of his rights, the appellant indicated that he did not wish to make a statement
> without an attorney present; that he did not question the appellant after he had invoked
> his right to counsel; that he and the appellant sat in his vehicle waiting for an

14

identification technician from the Alabama Department of Forensic Sciences; that he was filling out paperwork, and they were sitting in complete silence; that the appellant spontaneously started telling him about what had happened; that, at that time, he turned on his audiotape recorder; that the appellant talked for about fifteen to twenty minutes; that he did not ask the appellant any questions; and that, after the appellant finished talking, he told him he was going to be charged with murder and taken to jail.  Battiste also testified that the appellant was calm and appeared to know what he was saying and that the appellant did not appear to be under the influence of drugs or alcohol at that time.

The appellant testified that Battiste asked him what had happened; that, after he said he wanted an attorney, Battiste got him to sign a paper; that Battiste did not ask him anything after he signed the paper; that they sat in Battiste's vehicle for a long time; that he was not thinking about his rights at the time; and that he had been drinking most of that day and night and was drunk at that time.

...

The evidence presented during the suppression hearing showed that the statement the appellant made after he had invoked his right to counsel was spontaneous and was not the result of questioning by Battiste.  Therefore, the trial court properly denied the appellant's motion to suppress the statement he made to Battiste.

(Doc. 8, Exhibit D at 4, 6)

In order to be successful on this claim, the petitioner must show that the state court's adjudication of his claim resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law," or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2).  In making this determination, the court must presume that the state court's findings of fact in this regard are correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254 (e)(1).

The record before the court reflects that upon counsel's oral motion to suppress, the trial judge excused the jury and proceeded to hear arguments from counsel.  (Doc. 8, Exhibit A ) A suppression

15

hearing was conducted and  Officer Battiste, the arresting officer, was placed on the stand and was

questioned regarding the defendant's confession.  (Doc. 8, Exhibit A, p. 54) The court, along with

counsel for petitioner and the state, questioned Officer Battiste at length about the circumstances

leading up to the petitioner's confession.  Officer Battiste testified, in pertinent part, as follows:

Q:      Okay.  And, at the time that you had the defendant in the front of your car, did there come a
        point where you read him his rights under Miranda?

A:      Yes, ma'am, I did.

                                            ...

A:      I advised him of his Miranda rights based on the Miranda card that I had.  He indicated to me
        that he did not want to make a statement - - before I even completed Miranda he indicated that
        he wanted an attorney.  I advised him I still needed to advise him of his rights.  I completed
        advising him of his rights.  He indicated that he did not want to make a statement without his
        attorney present.  I asked him no more questions.  We continued to sit in the front seat of my
        vehicle.  While we were awaiting our crime scene technician...as we waited, Mr. Cochran
        began to tell me the story about what took place?

Q:      Let me clarify this.  Did you prompt him in any way? ....

A:      I was filling out paper work - - ....Complete silence in the car.  He began to make statements.  I
        had the tape recorder out as I began to do Miranda.  As he began to talk, I reach over and
        turned the tape recorder on and let him talk for as long as he wanted to talk.

                                            ...

Q:      And in the course of that fifteen or twenty minutes [that Cochran talked] did you ever ask or
        say anything to him?

A:      At the very end, when he seemed like he was through talking at all, I told Mr. Cochran that he
        was going to be charged with murder and that he would be taken to Mobile County Metro Jail.
        I never asked him any questions after he invoked his right to Miranda.

                                            ...

The Court:      All right.  Now, hold it, hold it.  What did you mean when you said "All right" there?

Lt. Battiste:     I was just turning off the tape recorder.  I was acknowledging that he wanted an
                  attorney and I was ending the interview at that point.

The Court:        All right.  Then what happened?

Lt. Battiste:     As I said, I sat in the car– continued to sit in the car with Mr. Cochran, and I was filling
                  out additional paperwork.  Mr. Cochran was still sitting there, and he began to
                  communicate to me.

The Court:        Well, what's the first thing he said?

Lt. Battiste:     He starts making statements that "I killed him, " and he just kept saying "I killed him, I
                  killed him."  And I never said anything.  I reached over, I had the tape recorder on the
                  dash, and I pulled it down and I sat it on my laptop computer, and I turned it on.  He
                  just continued to make a statement.  I never asked him any other questions.

(Doc. 8, Exhibit A, pp. 55-56; 167-169)

      The court also allowed the defendant to take the stand for the limited purpose of determining

what he thought his rights were the night of his arrest.

A:        I didn't actually think anything about no rights or anything.  Not running through my mind or
          anything like that.

Q:        Okay.  Now, were you drunk when you were there in the car with him?

A:        Was I drunk, yes.
                                              ...
A:        He asked me what happened to me and him, did he cut me or anything; like, did he cut me, or
          was we fighting, or anything like that.  That's when I told him that I wanted to talk to me a
          lawyer.

Q:        Right. Right.  And I understand that.  But what I'm asking you is after you told him, "No, I
          don't want to talk, I want a lawyer"?

A:        He still kept me in the car with him.

Q:        Yeah, he kept you in the car, but he didn't ask you anything else about what happened because
          you had said you wanted a lawyer?

A:      He asked me again - - - he asked me again, twice, you know, and then he gave me a piece of
        paper and I signed it.  Then, after that, he didn't ask me no more.  I just sat in the car with him.
        I sat in the car with him for a long time.

(Doc. 8 , Exhibit A, pp. 173-175)

In United States v. Anthony, 474 F.2d 770 (5th Cir. 1973) [7] the defendant, after receiving

Miranda warning from an FBI agent, requested an attorney but then initiated a conversation with the

agent by asking with what he was being charged.  Id. At 773.  The Court of Appeals held that

defendant's right to retained or appointed counsel was waived notwithstanding his earlier request for

counsel and found that defendant's statements were voluntarily offered rather than products of the

interrogation.  Id.  ("[E]nsuing questions asked by the FBI agent were designed merely to pursue the

line of inquiry begun by the appellant."); U.S. v. Perkins, 608 F.2d 1064, 1068 (11th Cir. 1979)

("When an accused initiates the conversation, his statements do not result from "interrogations" and are

admissible."); United States v. Rieves, 584 F.2d 740, 745 (5th Cir. 1978) (holding that when

defendant, unprompted by interrogation, reinitiated dialogue with officer, he affirmatively demonstrated

that he wished to waive his right to remain silent); see also Hyde v. Massey, 592 F.2d 249 (5th Cir.

1979) citing Michigan v. Mosely, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (court properly

admitted defendant's confession during interview in which he was Mirandized, gave no indication that

he wanted an attorney present and at the end of his confession wrote he understood his rights, and was

giving his statement freely, notwithstanding the fact that earlier, just after his arrest, defendant had

_____

        [7]  Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding
precedent on the Eleventh Circuit.  Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1209 (11th
Cir.1981) (en banc).

requested and spoken to an attorney)

In the present case, petitioner was *Mirandized* and thereafter requested an attorney.  The record reflects that after petitioner requested counsel questioning ceased but defendant remained in the police car with the officer.  After a brief period of silence petitioner began to make spontaneous statements, lasting approximately twenty minutes, which the officer recorded.  The record reflects that the statements were not elicited as a result of interrogation or coercion but, rather, were voluntary statements by petitioner.

Petitioner also argues that he was intoxicated at the time he made the confession and thus his statements should be suppressed.  In Grayson v. Thompson, 257 F.3d 1194 (11th Cir. 2001), cert. denied, 536 U.S. 964, 122 S.Ct. 2674, 153 L.Ed 2d 846 (2002) the petitioner contended that the trial court erred in denying this motion to suppress his confessions on the grounds that his intoxication and alcohol withdrawal, as well the coercive environment in which he was questioned, made his statements unreliable and involuntary.  In affirming the court's denial of the motion to suppress, the Eleventh Circuit Court of Appeals opined, in part, as follows:

> The evidence offered at the suppression hearing amply supports the trial court's finding that the confessions were voluntary. For example, Sergeant Pratt testified that he did not smell alcohol on Grayson or see any other indications of alcohol or drug use. Grayson was not slurring his speech and the only time that Pratt experienced difficulty understanding Grayson during his interviews was when Grayson lowered his head and talked "straight to the floor." Pratt acknowledged that  no alcohol or drug tests were performed despite Grayson's statements that he had consumed gallons of wine the night before. He described Grayson's general demeanor as "normal," although he admitted that Grayson appeared nervous a few times and became fidgety. The transcripts of Grayson's statements also do not suggest that he was intoxicated or suffering from alcoholic withdrawal at the time. Further, these transcripts demonstrate the officers' repeated and exhaustive efforts to apprise Grayson of his rights and to ensure that his statements were voluntarily given. In light of this record, we conclude that the trial judge

did not err in denying Grayson's motion to suppress his confessions.

Id. at 1230.

The facts surrounding the petitioner's claim of intoxication were considered by the trial court and implicitly rejected when the trial court denied the motion to suppress.  Specifically, in the present case Officer Battiste testified that the petitioner appeared calm and "didn't appear to be under the influence of any narcotic or drug at the time or alcohol.  He wasn't unusually fidgety or anything of that nature there.  Like I say, he talked - - I think there was, like , two pages of just him rambling on without me interrupting at all."  (Doc. 8, Exhibit A, pp. 56-57)  Based on the testimony of the arresting officer and that of petitioner, the trial court determined that petitioner's statement were not due to be suppressed.  The Alabama Court of Criminal Appeals reviewed the claim on the merits and concluded that the trial court's ruling was not in error.  In the final analysis, petitioner has failed to show that the court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"  or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  Accordingly, Claim 2 of the petition is due to be denied.

## III.   CONCLUSION

It is the opinion of the undersigned Magistrate Judge that the petitioner's rights were not violated in this cause on the issues raised in his petition for habeas corpus relief, and it is therefore recommended that the petition be denied.

The attached sheet contains important information regarding objections to this

20

Recommendation.

     **DONE** this 1st day of November, 2005.

                       /s/ Kristi K. DuBose
                       **KRISTI K. DuBOSE**
                       **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.      <u>**Objection**</u>.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      <u>**Opposing party's response to the objection.**</u>  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.      <u>**Transcript (applicable where proceedings tape recorded)**</u>.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**KRISTI K. DuBOSE
UNITED STATES MAGISTRATE JUDGE**